Joshua Androphy, Esq.
Morrison Tenenbaum PLLC
87 Walker Street, Floor 2
New York, New York 10013
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
..........................................................................X
JHON JAIRO CID HURTADO, VICTOR PEGUERO, and ALBERTO DE LA ROSA VOLQUEZ ROMEL individually *and on behalf of others similarly situated,*

                   *Plaintiffs,*

            -against-

HUDSON FULTON CORP. (d/b/a INDIAN ROAD CAFE), JASON MINTER, and THOMAS BOSCO

              *Defendants.*
..........................................................................X

**COMPLAINT**

**COLLECTIVE ACTION**
**UNDER 29 U.S.C. § 216(b)**

**ECF Case**

       Plaintiffs Jhon Jairo Cid Hurtado, Victor Peguero, and Alberto De La Rosa Volquez Romel individually and on behalf of others similarly situated ("Plaintiffs"), by and through their attorneys, Morrison Tenenbaum PLLC, upon information and belief, and as against each of Defendants Hudson Fulton Corp. (d/b/a Indian Road Cafe) ("Defendant Corporation"), Jason Minter, and Thomas Bosco allege as follows:

## NATURE OF ACTION

      1.     Plaintiffs are former employees of Defendants Hudson Fulton Corp. (d/b/a Indian Road Café), Jason Minter, and Thomas Bosco.

2.     Defendants own a bar and grill located at 600 West 218th Street, New York, New York 10034.

3.     Upon information and belief, Individual Defendants Jason Minter and Thomas Bosco serve or served as a owners, managers, principals or agents of Defendant Corporation and through this corporate entity operate a bar and grill.

4.     Plaintiffs worked in a bar and grill located at 600 West 218th Street, New York, New York 10034, where they performed the duties of dishwashers, food preparers, line cooks, and sous chefs.

5.     Plaintiffs regularly worked for Defendants in excess of 40 hours per week without appropriate minimum wage and overtime compensation for any of the hours that they worked.

6.     At all times relevant, Defendants failed to maintain accurate recordkeeping of their hours worked and failed to pay Plaintiffs appropriately for any hours worked over 40, either at the straight rate of pay, or for any additional overtime premium.

7.     Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

8.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

9.     At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing them the overtime compensation required by federal and state law and regulations.

10.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 et seq. and 650 et seq. (the "NYLL"), and the "spread of hours" and

overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees, and costs. Plaintiffs further allege, pursuant to the Wage Theft Prevention Act, New York Labor Law §198(1-b)-(1-d), that the Defendants violated the same New York Labor Law §195(1)-(3), and that the plaintiff should be awarded statutory damages, injunctive relief, and such other relief available by law.

11.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and of all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) (FLSA), and 28 U.S.C. § 1331 (federal question). Supplemental jurisdiction over Plaintiffs' state law claims is conferred by 28 U.S.C. § 1367(a).

13.    Venue is proper in this District under 28 U.S.C. § 391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district, Defendants operate their business in this district, and Plaintiffs have been employed by Defendants in this district.

## PARTIES

14.    Plaintiff Jhon Jairo Cid Hurtado ("Plaintiff Hurtado" or "Mr. Hurtado") is an adult individual residing in New York County, New York.

15.     Plaintiff Hurtado was employed by Defendants from approximately April 24, 2014 until on or about December 2016, from approximately January 2018 until on or about March 2019, and from approximately September 2019 until on or about November 26, 2019.

16.     At all relevant times to this complaint, Plaintiff Hurtado was employed by Defendants as a line cook at defendants' bar and grill.

17.     Plaintiff Victor Peguero ("Plaintiff Peguero" or "Mr. Peguero") is an adult individual residing in New York County, New York.

18.     Plaintiff Peguero was employed by Defendants from approximately 2012 until on or about September 21, 2019.

19.     At all relevant times to this complaint, Plaintiff Peguero was employed by Defendants as a dishwasher, a food preparer, and a line cook at defendants' bar and grill.

20.     Plaintiff Alberto De La Rosa Volquez Romel ("Plaintiff De La Rosa" or "Mr. De La Rosa") is an adult individual residing in Bronx County, New York.

21.     Plaintiff De La Rosa was employed by Defendants from approximately September 2017 until on or about December 11, 2019.

22.     At all relevant times to this complaint, Plaintiff De La Rosa was employed by Defendants as a dishwasher, a line cook, and a sous chef at defendants' bar and grill.

23.     Plaintiffs consent to being a party pursuant to 29 U.S.C. § 216(b), and bring these claims based upon the allegations herein as a representative party of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

*Defendants*

24.     Defendants own, operate and/or control a bar and grill in the Inwood section of Manhattan in New York City under the name "Indian Road Café".

25.     Upon information and belief, Defendant Hudson Fulton Corp. (d/b/a Indian Road Café or "Defendant Corporation") is a corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 600 West 218th Street, New York, New York, 10034.

26.     Defendant Jason Minter is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant Jason Minter is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporation. Defendant Jason Minter possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. Defendant Jason Minter determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and the authority to hire and fire employees.

27.     Defendant Thomas Bosco is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period. Defendant Thomas Bosco is sued individually in his capacity as an owner, officer and/or agent of Defendant Corporation. Since 2019, Defendant Thomas Bosco possesses or possessed operational control over Defendant Corporation, an ownership interest in Defendant Corporation, or controlled significant functions of Defendant Corporation. Since 2019, Defendant Thomas Bosco determined the wages and compensation of the employees of Defendants, including Plaintiffs, and established the schedules of the employees, maintained employee records, and the authority to hire and fire employees.

**FACTUAL ALLEGATIONS**

*Defendants Constitute Joint Employers*

28.     Defendants operate a bar and grill in the Inwood section of Manhattan in New York City.

29.      Individual Defendants Jason Minter and Thomas Bosco possess operational control over Defendant Corporation; possess an ownership interest in Defendant Corporation, and control significant functions of Defendant Corporation.

30.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

31.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees) working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

32.     Defendants jointly employed Plaintiffs, and all similarly situated individuals, and are Plaintiffs' (and all similarly situated individuals) employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

33.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

34.     At all relevant times, Hudson Fulton Corporation and Jason Berger were Plaintiffs' employers within the meaning of the FLSA and NYLL.

35.     Since 2019, Thomas Bosco was Plaintiffs' employer with the meaning of the FLSA and NYLL

36.     Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange

for Plaintiffs' services.

37.    In each year from 2017 to 2020, Defendants, both individually and jointly, have had gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

38.    In addition, upon information and belief, Defendants and/or their enterprises have directly engaged in interstate commerce. For example, numerous items that have been sold in the bar and grill on a daily basis have been produced outside of the State of New York.

## Individual Plaintiffs

39.    Plaintiffs are former employees of Defendants, primarily employed in performing the duties of dishwashers, line cooks, and sous chefs at the bar and grill.

40.    Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. § 216(b).

## Plaintiff Jhon Jairo Cid Hurtado

41.    Plaintiff Hurtado was employed by Defendants from approximately April 24, 2014 until on or about December 2016, from approximately January 2018 until on or about March 2019, and from approximately September 2019 until on or about November 26, 2019.

42.    Plaintiff Hurtado was employed by Defendants as a dishwasher and a line cook.

43.    Plaintiff Hurtado regularly handled goods in interstate commerce, such as food, condiments, and supplies necessary to perform his duties as a line cook.

44.    Plaintiff Hurtado's work duties required neither discretion nor independent judgment.

45.     Throughout his employment with Defendants, Plaintiff Hurtado regularly worked in excess of 40 hours per week.

46.     From approximately April 2014 until on or about December 2016, from approximately January 2018 until on or about March 2019, and from approximately September 2019 until on or about October 2019, Plaintiff Hurtado's work schedule varied every week but worked a range of 40 to 48 hours per week, including approximately 10 to 12 hours per day on Saturday and Sunday.

47.     From approximately November 9, 2019 until on or about November 26, 2019, Plaintiff Hurtado's work schedule varied every week but worked a range of 50 to 60 hours per week.

48.     From approximately April 2014 until on or about September 2019, Plaintiff Hurtado was paid his wages in a combination of business check and cash.

49.     From approximately September 2019 until on or about November 2019, Plaintiff Hurtado was paid his wages in a combination of personal check and cash.

50.     From approximately April 2014 until on or about December 2014, Plaintiff Hurtado was paid $8.00 per hour for his first forty hours worked per week, and $12.00 per hour for his hours above forty worked per week.

51.     From approximately January 2015 until on or about December 2015, Plaintiff Hurtado was paid $8.50 per hour for his first forty hours worked per week, and $12.75 per hour for his hours above forty worked per week.

52.     From approximately January 2016 until on or about December 2016, Plaintiff Hurtado was paid $9.50 per hour for his first forty hours worked per week, and $14.25 per hour for his hours above forty worked per week.

53.     From approximately January 2018 until on or about December 2018, Plaintiff Hurtado was paid $13.00 per hour for his first forty hours worked per week, and $19.50 per

hour for his hours above forty worked per week.

54.     From approximately January 2019 until on or about March 2019 and, Plaintiff Hurtado was paid $17.00 per hour for his first forty hours worked per week, and $25.50 per hour for his hours above forty worked per week.

55.     From approximately September 2019 until on or about November 26, 2019, Plaintiff Hurtado was paid at a flat rate of $17.00 for all hours he was paid for.  Defendants regularly underpaid Plaintiff Hurtado by approximately seven hours per week during this time.

56.     From approximately September 2019 until on or about November 26, 2019, Defendants illegally withheld a portion of Plaintiff Hurtado's wages via his personal check and claimed that the portion withheld was for taxes. Upon information and belief, Defendants did not actually pay the withheld portion as taxes.

57.     Defendants never paid Plaintiff Hurtado an extra hour of pay at the minimum wage rate for days when his spread of hours worked exceeded ten hours.

58.     Defendants never provided Plaintiff Hurtado with any document or other statement accounting for his actual hours worked or setting forth the rate of pay for all his hours worked.

59.     No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Hurtado's regarding wages as required under the FLSA and NYLL.

60.     Defendants did not provide Plaintiff Hurtado with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

61.     Instead, in or about September to November 2019, defendants did not pay Plaintiff Hurtado for all his hours worked, shorting him by approximately seven hours per week.

62.     Additionally, on approximately two occasions, Defendants instructed Plaintiff Hurtado that he would not be able to cash or deposit his check for two weeks.

63.     Defendants never provided Plaintiff Hurtado with a written notice, in English and in Spanish (Plaintiff Hurtado's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Victor Peguero*

64.     Plaintiff Peguero was employed by Defendants from approximately 2012 until on or about September 21, 2019.

65.     Plaintiff Peguero was employed by Defendants as a dishwasher, waiter, busser food preparer, and a line cook.

66.     Plaintiff Peguero regularly handled goods in interstate commerce, such as food, condiments, and supplies necessary to perform his duties as a line cook.

67.     Plaintiff Peguero's work duties required neither discretion nor independent judgment.

68.     Throughout his employment with Defendants, Plaintiff Peguero regularly worked in excess of 40 hours per week.

69.     From approximately January 2014 until on or about September 21, 2019, Plaintiff Peguero worked from approximately 8:00 a.m. until or about 4:00 p.m., Saturdays and Sundays and from approximately 11:00 a.m. until on or about 7:00 p.m. three days a week (typically 40 hours per week).  However, approximately once per month Plaintiff Peguero would work six days per week for a total of 48 hours per week.

70.     Throughout his employment, Plaintiff Peguero was paid his wages by check.  Plaintiff Peguero was paid by a payroll check through approximately July 2019 and by a personal check from approximately August 2019.

71.     From approximately January 2014 until on or about December 2014, Plaintiff Peguero was paid $8.00 per hour for 40 hours per week.  For weeks when he worked six days, or 48 hours per week, he was not paid any additional amount.

72.     From approximately January 2015 until on or about December 2015, Plaintiff Peguero was paid $8.50 per hour for 40 hours per week.  For weeks when he worked six days, or 48 hours per week, he was not paid any additional amount.

73.     From approximately January 2016 until on or about December 2016, Plaintiff Peguero was paid $9.50 per hour for 40 hours per week.  For weeks when he worked six days, or 48 hours per week, he was not paid any additional amount.

74.     From approximately January 2018 until on or about December 2018, Plaintiff Peguero was paid $13.00 per hour for 40 hours per week.  For weeks when he worked six days, or 48 hours per week, he was not paid any additional amount.

75.     From approximately January 2019 until on or about September 21, 2019, Plaintiff Peguero was paid $15.00 per hour for all his hours worked.

76.     Starting around March 2019, Defendants some weeks would pay Plaintiff Peguero by payroll check and other weeks by personal check.  When Defendants paid Plaintiff Pegeuro by personal check, they would pay Plaintiff Peguero for fewer hours than he worked, typically paying him for 25 to 30 hours for a week when he worked 40 hours.

77.     When Defendants paid Plaintiff Peguero by personal check, Defendants illegally withheld a portion of Plaintiff Peguero's wages via his personal check and claimed that the portion withheld was for taxes.  Upon information and belief, Defendants did not actually pay the withheld portion as taxes.

78.     When Defendants paid Plaintiff Peguero by personal check, they never provided Plaintiff Peguero with any document or other statement accounting for his actual hours worked or setting forth the rate of pay for all his hours worked.

79.     When Defendants paid Plaintiff Peguero by payroll check, sometimes the information on the wage statement showed fewer hours than what Plaintiff Peguero worked.

80.     On more than ten occasions, the checks from Defendants bounced. Defendants

would then usually take at least two weeks to pay Plaintiff Peguero his wages for the week that the bounced check.

81.     Plaintiff Peguero was not paid any amount for his last week of work.

82.     No notification, either in the form of posted notices, or other means, was ever given to Plaintiff Peguero regarding wages as required under the FLSA and NYLL.

83.     Defendants never provided Plaintiff Peguero with a written notice, in English and in Spanish (Plaintiff Peguero's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Alberto De La Rosa Volquez Romel*

84.     Plaintiff De La Rosa was employed by Defendants from approximately September 2017 until on or about December 11, 2019.

85.     Plaintiff De La Rosa was employed by Defendants as a dishwasher, a line cook, and a sous chef.

86.     Plaintiff De La Rosa regularly handled goods in interstate commerce, such as food, condiments, and supplies necessary to perform his duties as a line cook.

87.     Plaintiff De La Rosa's work duties required neither discretion nor independent judgment.

88.     Throughout his employment with Defendants, Plaintiff De La Rosa's regularly worked in excess of 40 hours per week.

89.     From approximately September 2017 until on or about October 27, 2019, Plaintiff De La Rosa worked from approximately 3:00 p.m. until or about 11:30 p.m., Mondays through Thursdays and from approximately 7:00 a.m. until on or about 5:00 p.m. Saturdays and Sundays (typically 54 hours per week).

90.     From approximately November 24, 2019 until on or about December 11, 2019, Plaintiff De La Rosa worked from approximately 2:00 p.m. until on or about 11:00 p.m.

Tuesdays, Wednesdays, and Fridays and from approximately 7:00 a.m. until on or about 5:00 p.m. Saturdays and Sundays (typically 47 hours per week).

91.    From approximately September 2017 until on or about August 2019, Plaintiff De La Rosa was paid his wages in a combination of business check and cash.

92.    From approximately September 2019 until on or about December 11, 2019, Plaintiff De La Rosa was paid his wages in a combination of personal check and business check.

93.    From approximately September 2017 through March 2017, Plaintiff De La Rosa was paid at the rate $13 per hour for all hours worked, with no increase to his rate of pay for hours above 40 per week, in a combination of check and cash.

94.    From approximately April 2018 until on or about August 2019, Plaintiff De La Rosa was paid a fixed salary of $750 per week ($300 by business check and $450 in cash).

95.    From approximately August 2019 until on or about October 27, 2019 Plaintiff De La Rosa was paid a fixed salary of $800 per week in a combination of personal check and cash. Defendants claimed that Plaintiff De La Rosa was being paid $1,100 per week and that $300 was being withheld for taxes. However, Defendants illegally withheld a portion of Plaintiff De La Rosa's wages via his personal check and claimed that the portion withheld was for taxes.  Upon information and belief, Defendants did not actually pay the withheld portion as taxes.

96.    Defendants failed to pay Plaintiff De La Rosa for his last two and a half weeks of work, from November 24, 2019 through December 11, 2019.

97.     Plaintiff De La Rosa was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

98.    Defendants never provided Plaintiff De La Rosa with any document or other statement accounting for his actual hours worked or setting forth the rate of pay for all his hours worked.

99.     No notification, either in the form of posted notices, or other means, was ever given to Plaintiff De La Rosa regarding wages as required under the FLSA and NYLL.

100.     Defendants did not provide Plaintiff De La Rosa with each payment of wages an accurate statement of wages, as required by NYLL 195(3).

101.     Defendants never provided Plaintiff De La Rosa with a written notice, in English and in Spanish (Plaintiff De La Rosa's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

102.     Approximately twice per month throughout Plaintiff De La Rosa's employment, the check he received from Defendants would bounce and would not be replaced for several weeks, resulting in Plaintiff De La Rosa not actually receiving his wages until several weeks after he was supposed to.

*Defendants' General Employment Practices*

103.     Defendants regularly required Plaintiffs to work in excess of forty (40) hours per week without paying them the proper minimum wage and overtime compensation.

104.     At all times relevant to this complaint, Defendants maintained a policy and practice of requiring Plaintiffs and all similarly situated employees to work in excess of forty (40) hours per week without paying them appropriate minimum wage, overtime and spread of hours pay as required by federal and state laws.

105.     Defendants paid Plaintiffs in a combination of business check and cash and then a combination of personal check and cash.

106.     In addition, from approximately September 2019 until on or about December 2019, Defendants illegally withheld a portion of Plaintiffs' wages via their personal check and claiming that the portion withheld is for taxes.

107.     Defendants willfully disregarded and purposefully evaded record keeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain

accurate and complete timesheets and payroll records.

108.    By employing these practices, Defendants avoided paying Plaintiffs at the minimum wage rate and overtime rate of time and a half for most or all his hours worked in excess of forty (40) hours per week.

109.    Defendants failed to post required wage and hour posters bar and grill, and did not provide Plaintiffs with statutorily required wage and hour records or statements of their pay received, in part so as to hide Defendants' violations of the wage and hour laws, and to take advantage of Plaintiffs' relative lack of sophistication in wage and hour laws.

110.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for (1) their full hours worked and (2) overtime compensation.

111.    Defendants did not provide Plaintiffs, and similarly situated employees, with the wage statements and annual pay notices required by NYLL §§195(1) and 195(3).

112.    Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours  worked, as required by NYLL §195(3).

113.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of

the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

### FLSA COLLECTIVE ACTION CLAIMS

114.    Plaintiffs bring their FLSA minimum and overtime compensation as well as their liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants, or any of them, on or after the date that is three years before the filing of the complaint in his case (the "FLSA Class Period"), as employees of Papaya Dog (the "FLSA Class").

115.    At all relevant times, Plaintiffs and other members of the FLSA Class who are and/or have been similarly situated, had substantially similar job requirements and pay provisions, and were subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the required overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records required by the FLSA.

116.    The claims of Plaintiffs stated herein are similar to those of the other employees.

### FIRST CAUSE OF ACTION
**(Violation of the Minimum Wage Provisions of the FLSA)**

117.    Plaintiffs repeat and re-allege all paragraphs above as though fully set forth herein.

118.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

119.     At all times relevant to this action, Defendants engaged in commerce or in an industry or activity affecting commerce.

120.     Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

121.     Defendants failed to pay Plaintiffs at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

122.     Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate is willful within the meaning of 29 U.S.C. § 255(a).

123.     Plaintiffs were in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (Violation of the Overtime Provisions of the FLSA)

124.      Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

125.    At all times relevant to this action, Defendants were Plaintiffs' employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA class members), control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for their employment.

126.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

127.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

128.    Defendants, in violation of the FLSA, failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207 (a)(1).

129.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

130.     Plaintiffs (and the FLSA Class members) have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### (Violation of the New York Minimum Wage Act)

131.    Plaintiffs repeat and re-allege all paragraphs above as though fully set forth herein.

132.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and

fire Plaintiffs, controlled their terms and conditions of employment, and determined the rates and methods of any compensation in exchange for their employment.

133.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor have paid Plaintiffs less than the minimum wage.

134.    Defendants' failure to pay Plaintiffs the minimum wage is willful and without a good faith basis within the meaning of N.Y. Lab. Law § 663.

135.    Plaintiffs were damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
**(Violation of the Overtime Provisions of the New York State Labor Laws)**

136.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

137.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiffs (and the FLSA Class members), control terms and conditions of employment, and determine the rates and methods of any compensation in exchange for employment.

138.    Defendants, in violation of the NYLL and associated rules and regulations, failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of N.Y. Lab. Law § 190 *et seq*. and supporting regulations of the New York State Department of Labor.

139.    Defendants failed to pay Plaintiffs (and the FLSA Class members) in a timely fashion, as required by Article 6 of the New York Labor Law.

140.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

141.    Plaintiffs (and the FLSA Class Members) were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (Violation of the Spread of Hours Wage Order of the New York Commissioner of Labor)

142.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

143.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of New York Lab Law §§ 190 *et seq*. and 650 *et seq*. and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. Tit. 12, § 146- 1.6.

144.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of New York Lab. Law § 663.

145.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (Violation of the Notice and Recordkeeping Requirements of the New York Labor Law)

146.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

147.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), of their rate of pay, regular pay day, and such other information as required by NYLL §195(1).

148.    Defendants are liable to Plaintiffs in the amount of $5,000, together with costs and attorney's fees.

## SEVENTH CAUSE OF ACTION

**(Violation of the Wage Theft Protection Act)**

149.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

150.     The defendants failed to furnish to the plaintiffs, at the time of hiring, a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; any doing business as names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the Wage Theft Prevention Act, N.Y. Lab. Law § 195(1) and N.Y. Comp. Codes R. & Regs. tit.12, § 146-2.2.

151.     Due to the defendants' violation of the Wage Theft Prevention Act, N.Y. Lab. Law § 195(l) and N.Y. Comp. Codes R. & Regs. tit.12, 146-2.2, the plaintiffs should be awarded statutory damages of $50.00 per day that the violation occurred, up to a maximum of $5,000, pursuant to N.Y. Lab. Law §198(1-b).

## EIGHTH CAUSE OF ACTION
**(Violation of the Wage Statement Provisions of the New York Labor Law)**

152.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

153.     Defendants did not provide Plaintiffs with accurate wage statements upon each payment of wages, as required by NYLL 195(3).

154.     Defendants are liable to Plaintiffs in the amount of $5,000 each, together with costs and attorney's fees.

**NINTH CAUSE OF ACTION**
**(Violation of the Timely Payment Provisions of the New York Labor Law)**

155.    Plaintiffs repeat and re-allege all paragraphs above as set forth fully herein.

156.    Defendants regularly failed to paid Plaintiffs on a regular weekly basis, in violation of NYLL §191.


157.    The Plaintiffs are entitled to recover liquidated damages pursuant to the Wage Theft Prevention Act, N.Y. Lab. Law §198(1-a).

158.    Defendants are liable to Plaintiffs in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA class members

(d)     Declaring that Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs and the FLSA class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violation of the provisions of the FLSA have been willful as to Plaintiffs and the FLSA class members;

(f)     Awarding Plaintiffs and the FLSA class members damages for the amount of unpaid wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Awarding Plaintiffs and the FLSA class member liquidated damages pursuant to the Wage Theft Prevention Act, New York Labor Law §198(1-a), and the Minimum Wage Act, N.Y. Lab. Law §663(1);

(i)      Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)      Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs and the members of the FLSA Class;

(k)      Declaring that Defendants violated the Spread of Hours Wage Order of the New York Commission of Labor as to Plaintiffs;

(l)      Declaring that Defendants have violated the recordkeeping requirements of the NYLL with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages; and any deductions or credits taken against wages;

(m)     Declaring that Defendants' violation of the New York Labor Law and Spread of Hours Wage Order were willful as to Plaintiffs;

(n)      Awarding Plaintiffs and the FLSA class members damages for the amount of unpaid overtime wages and damages for any improper deductions or credits taken against wages under the NYLL as applicable;

(o)      Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(p)      Awarding Plaintiffs and the FLSA class members liquidated damages in an amount equal to one hundred percent (100%) of the total amount minimum wage, spread of hours pay, overtime compensation, and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable;

(q)      Awarding Plaintiffs and the FLSA class members pre-judgment and post-judgment interest as applicable;

(r)     Awarding Plaintiffs and the FLSA class members the expenses incurred in this action, including costs and attorney's fees;

(s)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(t)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs respectfully request a trial by jury on all claims triable by a jury.

Dated: New York, New York
      October 30, 2020

MORRISON TENENBAUM PLLC

_____/s/ Joshua S. Androphy_____
By:     Joshua S. Androphy
      87 Walker Street, Floor 2
      New York, New York 10013
      jandrophy@m-t-law.com
      *Attorneys for Plaintiff*

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I, Alberto De La Rosa Volquez Romel, am an employee currently or formerly employed by HUDSON FULTON CORPORATION, JASON MINTER, and THOMAS BOSCO and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contract for Legal Services signed by the named plaintiff in this case.

Yo, Alberto De La Rosa Volquez Romel, soy un empleado actualmente o anteriormente empleado por HUDSON FULTON CORPORATION, JASON MINTER y THOMAS BOSCO y / o entidades relacionadas. Doy mi consentimiento para ser un demandante en una acción para cobrar salarios no pagados. Acepto que estoy obligado por los términos del Contrato de Servicios Legales firmado por el demandante designado en este caso.

_Romelne sa Roco_
Alberto De La Rosa Volquez Romel


_2-21-2020_
Date/Fecha

## CONSENT TO BECOME PARTY PLAINTIFF/ CONSENTIMIENTO PARA CONVERTIRSE EN DEMANDANTE

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of:

**Indian Road Café; 600 West 218th Street, New York, New York 10034**

to pay me overtime wages as required under state and/or federal law and also authorizes the filing of this consent in the action(s) challenging such conduct. I authorize the representative plaintiffs and designate them class representatives as my agents to make decisions on my behalf concerning the litigation, the method and manner of conduct this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

Con mi firma a continuación, autorizo la presentación y el procesamiento de reclamos en mi nombre y en mi nombre para impugnar la falla de:

**Indian Road Café; 600 West 218th Street, Nueva York, Nueva York 10034**

para pagarme las horas extraordinarias según lo requerido por la ley estatal y / o federal y también autoriza la presentación de este consentimiento en las acciones que impugnen dicha conducta. Autorizo a los demandantes representativos y los designo representantes de la clase como mis agentes para tomar decisiones en mi nombre con respecto al litigio, el método y la forma de llevar a cabo este litigio, la firma de un acuerdo con el abogado de los demandantes sobre los honorarios y costos de los abogados, y todo otros asuntos relacionados con esta demanda.

_____
Signature

_____
Print Name    Jnon Jairo Cid Hurtado

Date: 12/9/19

<u>CONSENT TO BECOME PARTY PLAINTIFF/ CONSENTIMIENTO PARA</u>
<u>CONVERTIRSE EN DEMANDANTE</u>

By my signature below, I hereby authorize the filing and prosecution of claims in my name and
on my behalf to contest the failure of:

**Indian Road Café; 600 West 218th Street, New York, New York 10034**

to pay me overtime wages as required under state and/or federal law and also authorizes the
filing of this consent in the action(s) challenging such conduct. I authorize the representative
plaintiffs and designate them class representatives as my agents to make decisions on my behalf
concerning the litigation, the method and manner of conduct this litigation, the entering of an
agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters
pertaining to this lawsuit.

Con mi firma a continuación, autorizo la presentación y el procesamiento de reclamos en mi
nombre y en mi nombre para impugnar la falla de:

**Indian Road Café; 600 West 218th Street, Nueva York, Nueva York 10034**

para pagarme las horas extraordinarias según lo requerido por la ley estatal y / o federal y
también autoriza la presentación de este consentimiento en las acciones que impugnen dicha
conducta. Autorizo a los demandantes representativos y los designo representantes de la clase
como mis agentes para tomar decisiones en mi nombre con respecto al litigio, el método y la
forma de llevar a cabo este litigio, la firma de un acuerdo con el abogado de los demandantes
sobre los honorarios y costos de los abogados, y todo otros asuntos relacionados con esta
demanda.

_____
Signature

Ulaoru Pegven
Print Name

Date: _12/9/19_