UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JHON JAIRO CID HURTADO, VICTOR PEGUERO, ALBERTO DE LA ROSA VOLQUEZ ROMEL, on behalf of themselves and others similarly situated,

          Plaintiffs,

-v-

HUDSON FULTON CORP., JASON MINTER, and THOMAS BOSCO,

          Defendants.

CIVIL ACTION NO.: 20 Civ. 9133 (RA) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Before the Court is the motion of Plaintiffs Jhon Jairo Cid Hurtado ("Hurtado"), Victor Peguero ("Peguero"), and Alberto De La Rosa Volquez Romel's ("Romel," collectively, the "Plaintiffs") requesting leave to file an amended complaint ("FAC") to add Inwood Farms, LLC ("Inwood") as a defendant in this action. (ECF No. 75 (the "Motion")). Defendant Thomas Bosco ("Mr. Bosco") opposes the Motion. (ECF No. 79 (the "Opposition")). Pro se Defendant Jason Minter ("Mr. Minter", with Mr. Bosco, the "Individual Defendants") has not responded to the Motion. (See ECF Nos. 73; 79). Defendant Hudson Fulton Corp. ("Hudson", with the Individual Defendants, the "Defendants"), has not appeared in this action. For the reasons set forth below, the Motion is GRANTED.

## II. BACKGROUND

### A. Factual Background

The Court summarizes the factual allegations in the FAC, which the Court accepts as true for purposes of the Motion. See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC, 709 F.3d 109, 119–20 (2d Cir. 2013); see also Corbett v. City of N.Y., No. 15 Civ. 09214 (GHW), 2016 WL 7429447, at *2–3 (S.D.N.Y. Dec. 22, 2016).[1]

Defendants operate a bar and grill (the "Bar")[2] in the Inwood neighborhood in Manhattan. (ECF No. 77-2 ¶¶ 3, 24, 28). Defendants had the power to hire and fire the Plaintiffs, control the terms and conditions of their employment, and determine the rates and methods of their compensation. (Id. ¶¶ 26–27, 34–36). Defendants were engaged in interstate commerce; for example, "numerous items that have been sold in the [Bar] on a daily basis [were] produced outside of the State of New York." (Id. ¶ 38). Mr. Bosco "possesses or possessed operational control over [], an ownership interest in [], or controlled significant functions of" Hudson as of 2019. (Id. ¶¶ 27, 35, 43).

In March 2021, Inwood, whose owner is Bosco, purchased the assets of Hudson pursuant to an asset purchase agreement (the "APA"). (Id. ¶¶ 39–40, 43; ECF No. 77-4). In the APA, Hudson represented that this action was the only lawsuit pending against it, took "full responsibility for defending" against the action, "and agree[d] that [Inwood did] NOT assum[e] any liability regarding same." (ECF No. 77-4 at 4–5 ¶ 4.7). Plaintiffs allege that, after entering

---

[1] Unless otherwise noted, all internal citations and quotation marks are omitted from citations in this Opinion and Order.
[2] The Bar was called Indian Road Café during the period of Plaintiffs' employment, (ECF No. 82 ¶ 2), and later became known as Inwood Farms. (ECF No. 79-1 at 8–9, 23).

into the APA, Inwood "continued to operate the same type of business" as Hudson, "using much of the same personnel and supervisory personnel, and using the same equipment." (ECF No. 77-2 ¶ 42). As he had done for Hudson, Bosco also managed Inwood, "including hiring and firing employees, setting employee schedules, and paying employees." (Id. ¶ 43).

From April 24, 2014 through December 2016, January 2018 through March 2019, and September 2019 through November 26, 2019, Hurtado worked at the Bar as a line cook and dishwasher. (ECF No. 77-2 ¶¶ 45–46). From 2012 until September 21, 2019, Peguero worked at the Bar as a line cook, dishwasher, waiter, busser, and food preparer. (Id. ¶¶ 68–69). From September 2017 until December 11, 2019, Romel worked at the Bar as a line cook, dishwasher, and sous chef. (Id. ¶¶ 88–89). During their employment, Plaintiffs regularly worked more than 40 hours per week, but were not paid proper overtime wages. (Id. ¶¶ 5, 49–51, 72, 92, 107). Defendants also failed to provide Plaintiffs with accurate wage statements and notices. (Id. ¶¶ 62, 64, 83, 86–87, 101–05).

B. **Procedural History**

On October 30, 2020, Plaintiffs filed this putative collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., New York Labor Law ("NYLL") §§ 190 et seq. and 650 et seq., and New York's Wage Theft Prevention Act, NYLL § 195 et seq., seeking payment of unpaid wages and related relief. (ECF No. 1 (the "Complaint")). Mr. Minter and Mr. Bosco initially failed to timely answer the Complaint or otherwise appear in this action (ECF No. 77 ¶ 3), and after Plaintiffs obtained certificates of default and moved for a default judgment, the Honorable Ronnie Abrams ordered them to show cause why a default judgment should not be entered against them. (ECF Nos. 19; 29; 30–34; 36; 48; 51). Following a conference before Judge Abrams

on February 24, 2022, Mr. Minter and Mr. Bosco filed answers to the Complaint, and the certificates of default against them were vacated. (ECF Nos. 53–55). Hudson has never appeared in this action, and the Clerk of the Court entered a certificate of default against it. (ECF No. 28). Judge Abrams denied Plaintiffs' motion for default judgment as to Hudson without prejudice to renewal after the liability of Mr. Minter and Mr. Bosco is resolved and referred the action to me for general pretrial supervision. (ECF Nos. 55; 57).

The parties' case management plan, which the Court adopted, set June 16, 2022 as the deadline to amend the pleadings pursuant to Fed. R. Civ. P. 15(a), (see ECF No. 66 at 4 (the "CMP")). On August 1, 2022, Plaintiffs served discovery requests, in response to which Mr. Bosco produced documents, including the APA, on October 31, 2022. (ECF No. 77 ¶ 4).

Plaintiffs took Mr. Bosco's deposition on November 18, 2022, and Mr. Minter's on December 23, 2022. (ECF Nos. 77 ¶ 4; 79-1; 79-2). Mr. Bosco testified that: (i) pursuant to the APA, he did not purchase Hudson, but rather assets from Hudson; (ii) before January 2020, he was not involved with or employed by the Bar and did not pay any of the Bar's employees, oversee their schedules, supervise their work, or set their pay; (iii) since January 2020, he has had the power to hire and fire the Bar's employees, supervise their schedules, and determine their rates of pay; (iv) after the APA, Mr. Bosco "bought all new equipment" for the Bar; (v) pursuant to the APA, Mr. Minter indemnified Mr. Bosco for Plaintiffs' claims in this action. (ECF No. 79-1 at 10, 12–14, 19, 22, 24). Mr. Minter testified that in 2019, Mr. Bosco's role with respect to the Bar was "as an observer," and that at that time, the Bar's daily operations were run by two managers and a bookkeeper. (ECF No. 79-2 at 14–16). Mr. Minter also testified that Mr. Bosco did not begin to manage the Bar until "early 2020." (Id. at 23).

4

On January 9, 2023, the parties certified the completion of discovery. (See ECF No. 73 (the "Notice"); see also ECF Nos. 58; 59; 62; 63; 65; 67; 69; 71; ECF min. entries May 11, 2022; June 28, 2022; July 18, 2022; Oct. 12, 2022).

On January 24, 2023, Plaintiffs filed the Motion. (ECF No. 75). On February 14, 2023, Mr. Bosco filed the Opposition. (ECF No. 79). On February 24, 2023, Plaintiffs filed a reply in support of the Motion. (ECF No. 81 (the "Reply")). With the Reply, Hurtado submitted a declaration (dated April 13, 2021, almost two years earlier) in which he attested that he worked at the Bar from April 2014 until December 2016, January 2018 until March 2019, and September 2019 until November 26, 2019, and that, in September 2019, Mr. Bosco "was the main person in charge" who paid him, set his schedule, and supervised his work. (ECF No. 82 ¶ 4).

### III. DISCUSSION

Plaintiffs argue they should be permitted to amend the Complaint, pursuant to Rule 15, and that permitting such amendment "would not unfairly prejudice any party." (ECF No. 76 at 3). Mr. Bosco does not directly address this argument. (See generally ECF No. 79). The Court first evaluates whether Rule 15 or Rule 16 governs the FAC, before turning to whether Plaintiffs have shown "good cause" under Rule 16(b).

#### A. Legal Standard

Determining whether a motion to amend is governed by Rule 15 or Rule 16 turns on whether "the motion is timely filed under [the] scheduling order in place in th[e] action. If it is timely filed, only Rule 15's liberal standard governs; if it is not, [the moving party] must also show good cause for the amendment under Rule 16." Soroof Trading Dev. Co. v. GE Microgen, Inc., 283 F.R.D. 142, 147 (S.D.N.Y. 2012) (requiring motion to amend filed after court-ordered deadline

5

to meet requirements of both Rule 15(a)(2) and Rule 16(b)(4)); see Cherotti v. Exphand, Inc., No. 20 Civ. 11102 (SLC), 2022 WL 2108604, at *5 (S.D.N.Y. June 10, 2022).

Federal Rule of Civil Procedure 15 provides that a court "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15 encourages courts to determine claims "on the merits" rather than disposing of claims or defenses based on "mere technicalities." Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 283 (2d Cir. 2000). The Second Circuit has explained that "district courts should not deny leave [to amend] unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." Friedl v. City of New York, 210 F.3d 79, 87 (2d Cir. 2000); see also McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."). "Consistent with the liberal principles underlying Rule 15(a)(2), the party opposing the amendment has the burden of establishing that leave to amend would be unduly prejudicial or futile." Pilkington N. Am., Inc v. Mitsui Sumitomo Ins. Co. of Am., No. 18 Civ. 8152 (JFK), 2021 WL 4991422, at *5 (S.D.N.Y. Oct. 27, 2021) (citing Ho Myung Moolsan Co. v. Manitou Min. Water, Inc., 665 F. Supp. 2d 239, 250 (S.D.N.Y. 2009)).

Federal Rule of Civil Procedure 16(b)(4) states that a court-ordered schedule "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "[W]hen a scheduling order has been entered which has restricted a party's ability to file an amended complaint, Rule 15's liberal standard must be balanced against the more stringent standard of Rule 16, under which such an order 'may be modified only for good cause.'" Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (quoting

Fed. R. Civ. P. 16(b)(4)). Courts in this District have held that a party cannot establish good cause where "the proposed amendment rests on information that the party knew, or should have known" before the deadline to amend. Id. In general, "[b]ecause compliance with Rule 16 is a threshold matter which may obviate the Rule 15 analysis," the Court should address it first. Id.; see Holmes v. Grubman, 568 F.3d 329, 334–35 (2d Cir. 2009) ("[T]he lenient standard under Rule 15(a) . . . must be balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause.").

Here, there can be no doubt that Plaintiffs filed the Motion more than six months after June 16, 2022, the final deadline to amend set forth in the CMP, (see ECF No. 66 at 4), i.e., the "date after which all amendments were prohibited, which would have triggered the stricter Rule 16(b)(4) 'good cause' standard thereafter." Sacerdote v. New York Univ., 9 F.4th 95, 115 (2d Cir. 2021), cert. denied, 142 S. Ct. 1112 (2022). Accordingly, the good cause standard in Rule 16(b)(4) applies to the analysis of the Motion. See Sokol Holdings, Inc. v. BMB Munai, Inc., No. 05 Civ. 3749 (KMW) (DCF), 2009 WL 3467756, at *2 (S.D.N.Y. Oct. 28, 2009) ("Where a scheduling order fixes a deadline for asserting additional claims, a party seeking leave to amend its pleadings after the deadline must show 'good cause' for modification of the scheduling order."); Int'l Media Films, Inc. v. Lucas Ent., Inc., No. 07 Civ. 1178 (JGK) (FM), 2008 WL 781823, at *2 (S.D.N.Y. Mar. 20, 2008) ("Because a pretrial scheduling order has been entered, [plaintiff's] right to amend its complaint is [] subject to Rule 16 of the Federal Rules of Civil Procedure."); see also Williams v. Town of Hempstead, No. 16 Civ. 1992 (ADS) (AYS), 2017 WL 4712219, at *2 (E.D.N.Y. Oct. 18, 2017) ("[A] plaintiff is required to demonstrate good cause under Rule 16(b) to modify a scheduling order[.]").

B. <u>Application</u>

In the Opposition, Mr. Bosco argues the Motion should be denied as futile, because Plaintiffs have failed to establish that Inwood is a "continuation" of Hudson. (ECF No. 79 at 2). Plaintiffs argue that denying the Motion would allow Inwood, which had notice of this action, to evade successor liability. (ECF No. 81 at 2–3). Neither party addresses the applicability of Rule 16(b)(4)'s good cause standard. The Court, properly, first evaluates whether "good cause" exists to permit amendment before addressing the parties' remaining arguments.

1. <u>Good Cause</u>

"Good cause requires a showing that the delay 'stemmed from any mistake, excusable neglect, or any other factor which might understandably account for failure of counsel to undertake to comply with the [s]cheduling [o]rder.'" <u>Eberle v. Town of Southampton</u>, 985 F. Supp. 2d 344, 347 (E.D.N.Y. 2013) (quoting <u>Fermin v. Toyota Material Handling, U.S.A., Inc.</u>, No. 10 Civ. 3755 (JLL), 2012 WL 1393074, at *3 (D.N.J. Apr. 23, 2012)); see <u>Kreisler v. P.T.Z. Realty, L.L.C.</u>, 318 F.R.D. 704, 706 (S.D.N.Y. 2016) ("The court may deny leave to amend for 'good reason,' which normally involves an analysis of the factors articulated in <u>Foman v. Davis</u>, 371 U.S. 178, 182 [] (1962): undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party."). "The 'good cause' inquiry turns on the diligence of the party seeking to modify the scheduling order." <u>Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.</u>, 304 F.R.D. 170, 174 (S.D.N.Y. 2014). To satisfy the "good cause" standard, a movant must demonstrate "that, despite having exercised diligence, the applicable deadline could not reasonably have been met." <u>Huber v. Nat'l R.R. Passenger Corp.</u>, No. 10 Civ. 09348 (ALC) (DF), 2012 WL 6082385, at *3 (S.D.N.Y. Dec. 4, 2012). "A party is not considered to have acted diligently where the proposed

8

amendment is based on information that the party knew, or should have known, in advance of the motion deadline." Christians of California, Inc. v. Clive Christian New York, LLP, No. 13 Civ. 0275 (KBF) (JCF), 2014 WL 3605526, at *4 (S.D.N.Y. July 18, 2014).

Courts may also consider "whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007). Absence of prejudice to the non-movant alone, however, is not sufficient to satisfy the "good cause" requirement of Rule 16. Woodworth v. Erie Ins. Co., No. 05 Civ. 6344 (CJS), 2009 WL 3671930, at *3 (W.D.N.Y. Oct. 29, 2009) ("[T]he absence of prejudice to a nonmoving party does not alone fulfill the good cause requirement of Rule 16(b)."); Est. of Ratcliffe v. Pradera Realty Co., No. 05 Civ. 10272 (JFK), 2007 WL 3084977, at *1 (S.D.N.Y. Oct. 19, 2007); Huber, 2012 WL 6082385, at *3. "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." McCarthy, 482 F.3d at 200; see Olaf Sööt Design, LLC v. Daktronics, Inc., 299 F. Supp. 3d 395, 397 (S.D.N.Y. 2017) ("'[A] district court has discretion to grant a motion to amend even where the moving party has not shown diligence in complying with a deadline for amendments in a Rule 16 scheduling order.'") (quoting Fresh Del Monte Produce, 304 F.R.D. at 176); Castro v. City of New York, No. 06 Civ. 2253 (RER), 2010 WL 889865, at *1 (E.D.N.Y. Mar. 6, 2010) ("[T]he district court must exercise its discretion under Rule 16(b) to determine whether the scheduling order should be modified so as to allow an amended complaint."); see also Shemendera v. First Niagara Bank N.A., 288 F.R.D. 251, 253 (W.D.N.Y. 2012) ("My discretion to grant that relief is limited by Rule 16(b)(4), which requires 'good cause' for an extension of a scheduling order deadline.").

The Court finds that good cause exists to grant Plaintiffs permission to add Inwood as a Defendant at this time.  Mr. Bosco does not dispute that Plaintiffs timely served discovery requests on August 1, 2022, that the Defendants did not produce the APA until October 31, 2022, and that the depositions of Mr. Bosco and Mr. Minter did not occur until November 18, 2022 and December 23, 2022, respectively.  (ECF No. 77 ¶ 4).  Mr. Bosco has not demonstrated that Plaintiffs should have known earlier than October 31, 2022, when Mr. Bosco produced the APA, that Inwood acquired assets from Hudson or otherwise had any connection to Defendants in this action.  (See generally ECF No. 79).  Indeed, Mr. Bosco does not dispute his ownership of Inwood, and that Inwood now operates the Bar in the same premises as Hudson during the period of Plaintiffs' employment.  (ECF No. 79-1 at 8–10, 14; see ECF No. 79 at 4–5).

In addition, the FAC—the allegations of which the Court must accept as true for purposes of the Motion—includes the allegation that Inwood "continued the business of Hudson . . . and is liable for the violations that Hudson [] committed under successor liability."  (ECF No. 77-2 ¶ 10; see id. ¶¶ 39–43).  In evaluating whether an entity is a "mere continuation" of its predecessor to establish successor liability, New York State courts consider whether:  "(i) all o[r] substantially all assets are transferred to the successor corporation, (ii) only one corporation exists after the transfer, (iii) assumption of an identical or nearly identical name, (iv) retention of the same corporation officers or directors, and (v) continuation of the same business[.]"  Meyer v. Blue Sky Alt. Inv. LLC, No. 653451/2019, 2020 WL 7360830, at *2 (Sup. Ct. N.Y. Cnty. Dec. 14, 2020) (granting leave to amend).  Although sparse, Plaintiffs' allegations are, under the liberal pleading standard of Federal Rule of Procedure 8, sufficient to state a cognizable theory on which Inwood might be held liable as a successor to Hudson.  See, e.g., Advantage Printing,

Inc. v. MD Hospitality LLC, No. 650898/2017, 2018 WL 746156, at *4–5 (Sup. Ct. N.Y. Cnty. Feb. 7, 2018) (successor liability adequately pled where plaintiff alleged, inter alia, that successor operated out of same offices as predecessor, shared employees, and operated similar business).

### 2. Delay and Prejudice

Mr. Bosco does not accuse Plaintiffs of unduly delaying their request to add Inwood as a Defendant, nor do they make any colorable assertion of prejudice or bad faith. (See ECF No. 79). Nor could he. While it would have been more prudent for Plaintiffs, before the CMP was entered, to propose an amendment deadline after the close of fact discovery, the record reflects that Plaintiffs promptly advised the Court, in the Notice that fact discovery was complete, of their intent to seek leave to amend to add Inwood as a Defendant, and filed the Motion pursuant to the briefing schedule set by the Court. (ECF Nos. 73–75). Thus, the Court finds that Plaintiffs did not unduly delay their request to amend, nor has the timing of their request unduly prejudiced Mr. Bosco or Inwood.

Mr. Bosco's challenges to the proposed amendments instead are based on the assertions that he did not employ any of the Plaintiffs, and that the APA absolves Inwood of any liability. (ECF No. 79 at 1, 12). One of the Plaintiffs, however, has attested that Mr. Bosco did set his pay, supervise him, and schedule his hours. (ECF No. 82 ¶¶ 4–5). Resolution of these disputed issues of fact, however, is not appropriate in evaluating whether good cause to amend exists, but must await summary judgment and trial in this action. See Kelco Constr., Inc. v. Spray in Place Sols., LLC, No. 18 Civ. 05925 (DG) (SIL), 2021 WL 1648052, at *6 (E.D.N.Y. Apr. 27, 2021) (finding that factual dispute did not preclude granting motion to amend); Amaya v. Roadhouse Brick Oven Pizza, Inc., 285 F.R.D. 251, 255 (E.D.N.Y. 2012) (same); Guideone Specialty Mut. Ins. Co. v.

Hapletah, No. 05 Civ. 1401 (DLI) (MDG), 2006 WL 1455468, at *1 (E.D.N.Y. May 24, 2006) (granting motion to amend, noting that "factual disputes [are] not appropriately addressed in the context of a motion to amend"); see also Adlife Mktg. & Commc'ns Co. v. Best Yet Mkt., Inc., No. 17 Civ. 2978 (ADS) (ARL), 2018 WL 4568801, at *2 (E.D.N.Y. Sept. 24, 2018) ("[T]he Court will not reject the proposed amendments based on a factual dispute better addressed during a potential trial.").

\* \* \*

Because Plaintiffs have demonstrated good cause under Rule 16 for their failure to file the FAC ahead of the June 16, 2022 deadline, and Defendants have failed to demonstrate futility, bad faith, undue delay, or undue prejudice, the Motion is GRANTED.

### IV. CONCLUSION

For the reasons set forth above, the Motion is GRANTED, and the Court orders as follows:

1. By **April 18, 2023**, Plaintiffs shall file the FAC, which shall constitute service on Mr. Bosco. See Fed. R. Civ. P. 5(b)(1).

2. By **April 25, 2023**, Plaintiffs shall serve the summons and FAC on each Defendant, and file proof of service on the docket.

The Clerk of Court is respectfully directed to close ECF No. 75, and to mail a copy of this Opinion and Order to Defendant Jason Minter.

Dated:   New York, New York          SO ORDERED.
         April 14, 2023

                                     _____
                                     **SARAH L. CAVE**
                                     **United States Magistrate Judge**